BROWN GAVALAS & FROMM LLP
Attorneys for Petitioners
ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

**12 CIV 3625**

-----------------------------------------------------------X
ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP,

Case No: 12 Civ.

*Petitioners,*

-against-

INTERNATIONAL OIL OVERSEAS INC.,
MARINA WORLD SHIPPING CORP.,
GRESHAM WORLD SHIPPING CORP.,
TARAZONA SHIPPING CO., S.A., QUOIN
ISLAND MARINE WL, BAKRI TRADING CO.
INC., SCHIFF HOLDING CO. S.A., and
TRANS MEDITERRANEAN SHIPPING INC.,

**VERIFIED PETITION TO RECOGNIZE, CONFIRM, AND ENFORCE FOREIGN ARBITRAL AWARD**

*Respondents.*
-----------------------------------------------------------X

Petitioners, ROXY INC., MEMPHIS SHIPPING PTE LTD., DYNASTIC MARITIME INC. and SAMANTHA SHIPMANGEMENT GROUP, by and through their undersigned attorneys, Brown, Gavalas & Fromm LLP, as and for their Verified Petition to Recognize, Confirm, and Enforce a Foreign Arbitral Award rendered in their favor and against respondent INTERNATIONAL OIL OVERSEAS INC. ("IOOI"), as well as IOOI's alter egos, MARINA WORLD SHIPPING CORP., GRESHAM WORLD SHIPPING CORP., TARAZONA SHIPPING CO., S.A., QUOIN ISLAND MARINE WL, BAKRI TRADING CO. INC., SCHIFF HOLDING CO. S.A., and TRANS MEDITERRANEAN SHIPPING INC. (collectively, the

"Alter Ego Respondents" and together with IOOI, "Respondents"), hereby allege upon information and belief as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this matter under Section 203 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.* (the "New York Convention"), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

2. In addition, this Court has admiralty subject matter over this matter under 28 U.S.C. § 1333 and Fed. R. Civ. P. 9(h) because the underlying dispute is maritime in nature and concerns the breach of maritime contracts.

3. Venue is proper in this District under Section 204 of the New York Convention and under 28 U.S.C. § 1391 because the Respondents are found in this District by virtue of their property held by the Clerk of the Court.

4. Respondents are subject to personal jurisdiction in this District by virtue of funds and other property that they have deposited with the Clerk of this Court in connection with the matter *Andros Maritime Co. Ltd. v. International Oil Overseas, Inc. et al.*, No. 11 Civ. 1657 (WHP), and which are currently being held pursuant to a Rule B Order of Attachment entered in *Springsea Maritime Corp., et al v. International Oil Overseas, Inc., et al.*, No. 11 Civ. 7821 (JGK).

## PARTIES

5. At all times relevant hereto, Roxy Inc. ("Roxy") was and still is a foreign business entity formed and existing under the laws of a foreign country, with a principal place of business in Greece and was the owner of the vessel NOSTOS.

6. At all times relevant hereto, Memphis Shipping Pte Ltd. ("Memphis Shipping")

was and still is a foreign business entity formed and existing under the laws of a foreign country, with a principal place of business in Greece and was the owner of the vessel MEMPHIS.

7. At all times relevant hereto, Dynastic Maritime Inc. ("Dynastic") was and still is a foreign business entity formed and existing under the laws of a foreign country, with a principal place of business in Greece and was the owner of the vessel VERES.

8. At all times relevant hereto, Samantha Shipmangement Group ("Samantha") was and still is a foreign business entity formed and existing under the laws of a foreign country, with a principal place of business in Greece and was the owner of the vessel GENIE.

9. Upon information and belief, at all times relevant hereto, IOOI was and still is a foreign business entity formed and existing under the laws of a foreign country, with an address and place of business at the Bakri Building, Al-Andalus Street, Jeddah, 21481, Saudi Arabia.

10. Upon information and belief, at all times relevant hereto, the Alter Ego Respondents were and still are foreign business entities formed and existing under the laws of foreign countries, and were and still are trade names, aliases, alter egos, paying agents, receiving agents, and/or joint venturers of respondent IOOI.

## FACTS

11. By a charterparty dated September 9, 2009, Roxy, as owner, agreed to charter the vessel NOSTOS to IOOI, as charterer, for a voyage from Fujairah, United Arab Emirates to Karachi, Pakistan with a cargo of fuel oil under terms and conditions more fully set forth in the parties' agreement. A true and correct copy of the fixture recap for this charterparty is annexed as Exhibit "A" to the Declaration of Stella Alexandri, submitted herewith.

12. By a charterparty dated April 8, 2010, Roxy, as owner, agreed to charter the vessel NOSTOS to IOOI, as charterer, for a voyage from Fujairah to Karachi to transport a cargo

3

of fuel oil under terms and conditions more fully set forth in the parties' agreement. A true and correct copy of the fixture recap for this charterparty is annexed as Exhibit "B" to the Declaration of Stella Alexandri, submitted herewith.

13. By a charterparty dated August 31, 2010, Memphis Shipping, as owner, agreed to charter the vessel MEMPHIS to IOOI, as charterer, for a voyage from Fujairah to Karachi to transport a cargo of fuel oil under terms and conditions more fully set forth in the parties' agreement. A true and correct copy of the signed charterparty is annexed as Exhibit "C" to the Declaration of Stella Alexandri, submitted herewith.

14. By a charterparty dated September 4, 2010, Memphis Shipping, as owner, agreed to charter the vessel MEMPHIS to IOOI, as charterer, for a voyage from Fujairah or Iran to Karachi to transport a cargo of fuel oil under terms and conditions more fully set forth in the parties' agreement. A true and correct copy of the fixture recap for this charterparty is annexed as Exhibit "D" to the Declaration of Stella Alexandri, submitted herewith.

15. By a charterparty dated July 8, 2010, Dynastic, as owner, agreed to charter the vessel VERES to IOOI, as charterer, for a voyage from Fujairah to Djibouti to transport a cargo of fuel oil under terms and conditions more fully set forth in the parties' agreement. A true and correct copy of the fixture recap for this charterparty is annexed as Exhibit "E" to the Declaration of Stella Alexandri, submitted herewith.

16. By a charterparty dated May 16, 2010, Samantha, as owner, agreed to charter the vessel GENIE to IOOI, as charterer, for a voyage from Fujairah to Karachi to transport a cargo of fuel oil under terms and conditions more fully set forth in the parties' agreement.[1] A true and correct copy of the fixture recap for this charterparty is annexed as Exhibit "F" to the Declaration of Stella Alexandri, submitted herewith.

---

[1] The fixture recap for this charterparty misnamed the owner of the vessel as Roxy.

17. The charterparties described in paragraphs 11 through 16 are maritime contracts (hereinafter collectively, "the Charterparties").

18. Each of the Charterparties contains a clause providing for arbitration of disputes in London with English law to apply.

19. During and following the performance of the Charterparties, certain disputes arose between the Petitioners and IOOI, and Petitioners claimed losses arising from unpaid demurrage.

20. Pursuant to the arbitration clauses set forth in the Charterparties, Petitioners appointed Edward Mocatta as their arbitrator, and IOOI appointed Simon Everton as its arbitrator.

21. Following the appointment of arbitrators, the Petitioners and IOOI filed their respective claims submissions and responses to the arbitration tribunal. IOOI also asserted counterclaims against Petitioners for cargo shortages with respect to the Charterparties.

22. On September 19, 2011, the arbitrators issued their unanimous award (the "Award"), a copy of which is annexed as Exhibit "G" to the Declaration of Stella Alexandri, submitted herewith. The Award granted Petitioners' claims in full, as follows, plus interest at a rate of 5% compounded quarterly:

| Charterparty | Principal Amount | Date Interest to Start | Interest Accrued as of April 30, 2012 | Total Due as of April 30, 2012 |
|---|---|---|---|---|
| NOSTOS 9.9.09 | $144,419.18 | 10.19.09 | $19,382.07 | $163,801.26 |
| NOSTOS 4.8.10 | $31,192.06 | 5.6.10 | $3,240.48 | $34,432.54 |
| MEMPHIS 8.31.10 | $8,417.50 | 10.8.10 | $680.55 | $9,098.06 |
| MEMPHIS 9.4.10 | $208,996.76 | 11.1.10 | $16,157.57 | $225,154.33 |
| VERES 7.8.10 | $71,649.30 | 9.17.10 | $6,014.98 | $77,664.28 |

| | | | | |
|---|---|---|---|---|
| GENIE 5.16.10 | $53,078.81 | 6.29.10 | $5,085.88 | $58,164.68 |
| **TOTALS:** | $517,753.61 | | $50,561.53 | $568,315.14 |

23. In addition to granting Petitioners' principal claims with interest, the Award directed IOOI to pay the arbitrators costs of £7,200 ($11,711.52[2]) plus interest for a total of $12,076.03 and Petitioners' attorneys' fees, amounting to €24,507.58 ($32,479.90) as of April 30, 2012. Said sums have already been paid by Petitioners in the first instance, and so Petitioners are entitled to reimbursement of these sums in the amount of $44,555.93.

24. The total sum due and owing to Petitioners as of April 30, 2012 is $612,871.07.

25. The Award also granted IOOI's counterclaim in the amount of $3,188.55 plus interest from October 24, 2010.

26. IOOI has failed and refused to pay Petitioners the amount due under the Award, or any part thereof, despite due demand therefor.

### AS AND FOR A FIRST CAUSE OF ACTION TO RECOGNIZE, CONFIRM AND ENFORCE THE AWARD

27. Petitioners repeat and re-allege the allegations set forth in paragraphs 1 through 26 as if the same were fully set forth herein.

28. Under English law, the Award is binding on the parties.

29. Both England and the United States are signatories to the New York Convention, which provides that a court sitting in any signatory nation must recognize and enforce a foreign arbitral award where (a) certified copies of both the agreement to arbitrate and the arbitral award are submitted to the court, (b) the application is timely filed, and (c) none of the enumerated defenses to recognition and enforcement are present.

30. Certified copies of the Charterparties containing the agreements to arbitrate and

---

[2] Exchange rates of $1:€1.3253 and $1:£1.6266 based on close of prior day's trading as published in the Wall Street Journal on April 30, 2012.

6

the Award are annexed as Exhibits "A" through "G" to the Declaration of Stella Alexandri, submitted herewith.

31. This Petition is timely under 9 U.S.C. § 207 because it was filed within three years from the day the Award was issued.

32. None of the enumerated defenses to recognition and enforcement applies.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE ALTER EGO RESPONDENTS TO ENFORCE THE AWARD AGAINST THEM AS TRADE NAMES, ALIASES, ALTER EGOS, PAYING AGENTS, RECEIVING AGENTS, OR JOINT VENTURERS OF IOOI

33. Petitioners repeat and re-allege the allegations set forth in paragraphs 1 through 32 as if the same were fully set forth herein.

34. Upon information and belief, IOOI and the Alter Ego Respondents are operated, controlled, and managed by a single economic enterprise known as the "Bakri Group," which is ultimately controlled by the Al-Bakri family and headed by Sheikh Abdul Kader Al-Bakri, with offices at The Bakri Building, Al-Andalus Street, Jeddah, 21481, Saudi Arabia.

35. Upon information and belief, among the entities that comprise the Bakri Group, including but not limited to IOOI and the Alter Ego Respondents, there is a commonality of control and management centered with the Al-Bakri family.

36. The Alter Ego Respondents and the Bakri Group at large are alter egos of respondent IOOI because they dominate and disregard the corporate form of IOOI to the extent that the Alter Ego Respondents and the Bakri Group at large are actually carrying on the business and operations of respondent IOOI as if the same were their own, or vice versa.

37. Upon information and belief, respondent IOOI is merely a shell corporation through which the Bakri Group and the Alter Ego Respondents conduct their business.

38. Upon information and belief, respondent IOOI has no separate, independent

7

identity from the Alter Ego Respondents and the Bakri Group at large.

39. Upon information and belief, the Bakri Group and/or respondent IOOI utilize the Alter Ego Respondents as paying or receiving agents or pass-through entities such that they can insulate themselves from creditors relating to their commercial obligations and in particular their vessel charters.

40. Further, upon information and belief, the Bakri Group at large and/or the Alter Ego Respondents use respondent IOOI as their chartering arm. That is, the Bakri Group and/or the Alter Ego Respondents use respondent IOOI's name to enter into charterparties so that they can insulate themselves from creditors relating to their commercial obligations and in particular their vessel charters.

41. It is not the general practice of the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent companies. Payments sent or received on behalf of another independent company are indicative of a relationship that is not arms' length.

42. Upon information and belief, the Alter Ego Respondents make and/or receive payments on respondent IOOI's behalf in circumstances where they have no contractual obligation or relationship to IOOI's creditors and/or debtors.

43. Upon information and belief, the Alter Ego Respondents made substantial payments on behalf of respondent IOOI pursuant to charterparties unrelated to this action even though they were under no contractual obligation to do so.

44. On July 3, 2007, Gresham World Shipping remitted a payment of €136,335.00 to Petitioners' manager on account of a hire obligation owed by IOOI, despite the fact that Gresham World Shipping was not obligated to make said payment.

45. On July 5, 2007, Tarazona Shipping remitted a payment of $135,835.00 to Petitioners' manager on account of a hire obligation owed by IOOI, despite the fact that Tarazona Shipping was not obligated to make said payment.

46. On December 17, 2007, Bakri Trading remitted a payment of $58,733.00 to Petitioners' manager on account of a hire obligation owed by IOOI, despite the fact that Bakri Trading was not obligated to make said payment.

47. On January 30, 2008, Schiff Holding remitted a payment of $59,084.29 to Petitioners' manager on account of a hire obligation owed by IOOI, despite the fact that Schiff Holding was not obligated to make said payment.

48. Upon information and belief, among the entities that comprise the Bakri Group, including IOOI and the Alter Ego Respondents, there is commingling of funds.

49. Upon information and belief, the entities that make up the Bakri Group, including but not limited to IOOI and the Alter Ego Respondents, share or shared common ownership, operation, and/or premises.

50. Upon information and belief, respondent IOOI uses the same postal address as the Bakri Group and the Alter Ego Respondents, to wit, Al-Andalus Street, P.O. Box 3757, Jeddah, 21424 (or 21481), Saudi Arabia.

51. Upon information and belief, among the entities that make up the Bakri Group, including but not limited to IOOI and the Alter Ego Respondents, there is an overlap in directors, officers, and/or employees.

52. Upon information and belief, the directors of respondent Marina World Shipping include Mr. Bakri and his immediate family members, who serve in many other positions within the Bakri Group. Further, two of the directors of respondent IOOI are tied to the Bakri Group.

53. Upon information and belief, respondent IOOI and the Alter Ego Respondents do not observe proper corporate formalities.

54. Based on the foregoing, as well as other activities, respondent IOOI and the Alter Ego Respondents should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other.

55. By virtue of the foregoing, the Alter Ego Respondents are properly considered parties to the subject charterparties as the trade names, aliases, alter egos, joint venturers, paying agents, and/or receiving agents of respondent IOOI.

56. In the action *Fair Spirit Maritime Ltd. v. International Oil Overseas, Inc., et al.*, No 08 Civ. 10109 (WHP), filed in this Court, the Alter Ego Respondents, except Trans Mediterranean Shipping Inc., were held responsible for an arbitral award against IOOI as alter egos of IOOI.

57. In sum, Petitioners respectfully request that the Court enforce the Award against IOOI and the Alter Ego Respondents and issue a Judgment against them for the full amount of the Award, including interest and costs, as set forth in paragraphs 22 through 24 herein.

WHEREFORE, Petitioners pray that:

a. process in due form of law issue against the Respondents, citing them to appear and answer under oath all and singular the matters alleged in this Petition;

b. pursuant to the First Cause of Action against respondent IOOI, the Award be recognized, confirmed, and made into a Judgment of this Court, to be entered in favor of Petitioners and against respondent IOOI, in the sums sought in paragraphs 22 through 24 herein, and that this Court also adjudge respondent IOOI liable to Petitioners for interest on the Award and Judgment;

c. an Order be issued directing respondent IOOI to pay Petitioners sufficient funds to satisfy the Award in all respects in the sums sought in paragraphs 22 through 24 herein;

d. pursuant to the Second Cause of Action against the Alter Ego Respondents, the Award be enforced and made into a Judgment of this Court, to be entered in favor of Petitioners and against the Alter Ego Respondents, in the sums sought in paragraphs 22 through 24 herein, and that this Court also adjudge the Alter Ego Respondents liable to Petitioners for interest on the Award and Judgment;

e. an Order be issued directing the Alter Ego Respondents to pay Petitioners sufficient funds to satisfy the Award in all respects in the sums sought in paragraphs 22 through 24 herein;

f. the Court retain jurisdiction over this matter for any further or supplemental proceedings as may be necessary for the purpose of enforcing the Judgment and/or any further judgments that may be issued;

g. the Court grant Petitioners their costs and disbursements, including reasonable attorneys' fees, in pursuing the Judgment and enforcement of the Award; and

h.  the Court grant Petitioners such further and different relief as the Court deems just and proper.

Dated: New York, New York
May 7, 2012

BROWN GAVALAS & FROMM LLP
Attorneys for Petitioners
ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP

Peter Skoufalos (PS-0105)
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

## VERIFICATION

Peter Skoufalos, the undersigned, an attorney admitted to practice in this Court, state that I am the attorney of record for Petitioners, ROXY INC., MEMPHIS SHIPPING PTE LTD., DYNASTIC MARITIME INC. and SAMANTHA SHIPMANGEMENT GROUP, in the within action; I have read the foregoing Verified Petition and know the contents thereof; the same is true to my knowledge based on documents in my file, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

The reason this verification is made by me and not by officers of petitioners is because there are no officers now present in this District.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of May, 2012, at New York, New York.

PETER SKOUFALOS