924-08/MEU
FREEHILL HOGAN & MAHAR, LLP
*Attorneys for Respondents*
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger
Lawrence J. Kahn
Susan Lee

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP,    12 Civ. 3625 (LAK)

                Petitioners,

                                        **DECLARATION OF**
  -against-                                **HASSAN MAHASSNI**

INTERNATIONAL OIL OVERSEAS INC.,
MARINA WORLD SHIPPING CORP.,
GRESHAM WORLD SHIPPING CORP.,
TARAZONA SHIPPING CO., S.A., QUOIN
ISLAND MARINE WL, BAKRI TRADING
CO. INC., SCHIFF HOLDING CO. S.A., and
TRANS MEDITERRANEAN SHIPPING INC.,

                Respondents.
-----------------------------------------------------------x

    HASSAN MAHASSNI, pursuant to 28 U.S.C. §1746 declares and says the following under penalty of perjury:

1. I graduated from the Faculty of Law of the University of Damascus with an LL.B. in 1957 and have, after training for two years, set up my own law practice in Damascus, Syria, until 1965. In 1965, I took up the position of Legal Advisor to the Saudi Arabian Ministry of Foreign Affairs ("MoFA"). In 1967, I was permitted to establish my own practice in Jeddah after working hours of the MoFA. In 1970, I resigned from the MoFA and devoted my time

1

386462.1

to my private practice in Jeddah. In 1979, I associated myself with the American law firm of Burlingham Underwood and Lord. In 1989, I joined the international firm of White & Case as a partner, until July 2005. Since then and until today, my practice continues to be one of the most reputable and highest-ranked Saudi law firms. I am the principal of the Law Firm of Hassan Mahassni.

2. I am licensed by the Saudi Arabian Ministry of Justice and have litigated before all Saudi Arabian courts and judicial committees like Shariah Courts, Board of Grievances, Labour committees, Tax Committees, the SAMA Committee on Banking Disputes and other judicial committees. My practice has been similar to that of both American Attorneys and my cumulative experience of working as a lawyer in Saudi Arabia is approximately 44 years. I am qualified to provide opinions on Saudi Arabian law to foreigners and have done so on numerous occasions.

3. I believe that I am considered to be one of the leading corporate and commercial lawyers in Saudi Arabia. I have considerable experience in advising and acting for both companies and general partnerships in relation to various liabilities for third parties under Saudi laws. I also have considerable experience and knowledge of the Companies' Law of Saudi Arabia including the construction and effect of provisions of the Companies' Law and various other regulations.

386462.1

4. In connection with this matter, I have been retained by Respondents to provide an opinion on Saudi Arabian law as it concerns piercing the corporate veil between foreign companies doing business in Saudi Arabia so as to reach the assets of one another. I have been informed by Freehill Hogan & Mahar, LLP (Attorneys for the Respondents), the entities are Panamanian companies with addresses and principal offices for conducting business in Saudi Arabia. I have been asked to provide my unbiased view of Saudi Arabian law in this regard for submission in these proceedings, as I understand one question which this Court will consider is whether Saudi Arabian law applies to the dispute, and, if it does apply, what Saudi Arabian law concerning corporate veil piercing states.

**Overview of Saudi Arabian Law**

5. The Kingdom of Saudi Arabia was created as an independent kingdom in 1932. There are four important features of Saudi Law that require explanation:

   a) Shariah law governs Saudi Law;

   b) In addition to Shariah law, Saudi Law consists of enactments by the executive (analogous to statutes);

   c) There is no system of binding judicial precedent; and

   d) The Saudi Courts apply a purposive approach to interpreting statutory law, and Shariah law prevails.

6. I explain each of these features in turn below.

7. As I explain below, the basic law of Saudi Arabia is Islamic law, called the 'Shariah' Law. Shariah Law provides both the constitution and the general or common law of the Kingdom. Shariah law is derived from four basic sources:

   a) first, the **Qur'an**. This is considered to be the primary source of Islamic jurisprudence. It represents, to Muslims, the word of God as revealed to and spoken by Prophet, Mohammed, peace be upon him, through the angel Gabriel, the Holy Spirit;

   b) second, the **Sunnah**, the record of the sayings and witnessed acts of the Prophet Mohammed, peace be upon him. The Sunnah literally means 'customary procedure or action' or 'norms'. The Sunnah contains the teachings, the exploits and depicts the way of life of Prophet Mohammed acting as the spiritual leader of the Community, and answering and providing solutions to various everyday problems. Prophet Mohammed sometimes allowed his disciples to perform various tasks, and the lack of objection is taken by many Islamic jurists as his implicit endorsement of his disciples' words and actions. The Sunnah takes the form of a collections of books called the Hadith, being descriptions in relation to the various teachings and actions of Prophet Mohammed;

   c) third, the **consensus of Islamic scholars**, usually called **'Ijma'**. Ijma is considered a secondary source and provides a way of discovering the law to meet the needs of the changing times by resorting to the general consensus of opinion among Islamic legal scholars of a particular era; and

   d) fourth, **analogy**, by which a law found in one of the first three sources is extended to similar cases. If the Qur'an, the Sunnah and Ijma fails to provide a

4

386462.1

rule which adequately address a problem, jurist may, as a last resort, use **Qiyas,** logical reasoning by analogy to precepts of the Qur'an or Sunnah.

8. The law derived from the third and fourth sources is considered not to be made but to be discovered, through reasoned interpretations of divine revelation (*i.e.* the first two sources). It is scholars rather than courts or the executive that are typically responsible for producing interpretations (this point links to my explanation, below, that there is no system of binding judicial decisions under Saudi Law). Writings of scholars from centuries ago remain influential. Nonetheless, it would be wrong to assume that the interpretation and application of Shariah law is fixed and static in its current form. In practice it continues to develop, through both the revision of old rules and the application of rules to novel situations.

9. It should also be noted that it is not uncommon for Islamic scholars to disagree on the particular precepts of Shariah law (which partly reflects differing schools of thought on Islamic theology in general). The existence of particular rules or the application of rules to particular situations can be controversial, with leading scholars adopting differing views.

10. In addition to Shariah Law, Saudi Law is also derived from the legislation enacted by the different Saudi Arabian executive bodies. Legislation is enacted in various forms, the most common of which are royal decrees, royal orders, council of ministers resolutions, ministerial resolutions and ministerial circulars.

386462.1

11. Where the legislation is issued by a Royal Decree, it is called '*nizam*', which can be conveniently translated into English as 'law' or 'statute' (though 'regulation' would probably be a more literal translation). These statutes are issued following consideration by the Council of Ministers and the Consultative Council. They have been of particular importance in modern times, to deal with institutions and social developments which did not exist when the religion of Islam was founded, for example Companies.

12. The interaction between Saudi statutes and Shariah law is markedly different from the relationship between statues and case law in Western Countries. Whereas in Western Countries a statute will override a common law principle if it conflicts, in the Saudi Arabia Shariah law must always prevail. In the event that a judge perceives a fundamental conflict between Shariah and a provision in a statute, he is obliged to apply the former and disregard the latter (in accordance with Article 48 of the Basic Law, Article 1 of the Law of Procedure before Shariah Courts (issued pursuant to Royal Decree No. M/21, dated 20/5/1421 H. (19/8/2000 G.))

13. By express stipulation in the country's constitution, Saudi Law is subject to the principles of Shariah Law. The 1992 Basic Law states :

> "*The Kingdom of Saudi Arabia is a fully sovereign Arab Islamic State. Its religion shall be Islam and its consititution shall be the Book of God and the Sunnah (Traditions) of His Messenger, may God's blessings and peace be upon him (PBUH)…* [Article 1]"

> *"Rule in the Kingdom of Saudi Arabia draws its authority from the Koran and the Sunnah of His Prophet. These two are sovereign over this law and all laws ['nizams'] of the state."* [Article 7]
>
> *"The Courts shall apply in cases brought before them the rules of the Islamic Shariah in agreement with the indications in the Qur'an and the Sunnah, and the laws issued by the ruler that do not contradict the Qur'an and the Sunnah"* [Article 48]

14. Further, Saudi Arabian Adjudicatory bodies do not consider themselves bound by precedents. They consider themselves bound to apply the principles of Shariah Law and the statutory instruments issued by the Saudi Arabian Government. The principles of Shariah Law play the dual roles of the paramount and residual laws. Saudi regulatory instruments are required and presumed not to contravene the principles of Shariah Law.

**The Concept of Companies under Saudi Arabian Law**

15. Primarily, the Regulations for Companies, issued pursuant to Royal Decree Number M/6 dated 22/3/1385 H. (corresponding to 22 July 1965) (the **'Companies' Law'**), regulates various corporate activities in Saudi Arabia.

16. The concept of separate legal entity is enshrined in Article 13 of the Companies' Law which states that once incorporated, a Company shall be considered a separate juristic entity. Article 13 states the following:

*"With the exception of (unincorporated) joint-ventures, a company shall from time of its incorporation, shall be considered a juristic person. Such personality, however may not be invoked vis-à-vis third parties except after completion of the incorporation formalities".*

17. Article 157 of the Companies Law explicitly outlines the limitation of liability of the shareholders and states the following:

    *"A limited liability partnership is a partnership consisting of two or more partners who are responsible for the debts of the partnership to the extent of their (respective) interests in the capital, and in which the number of partners shall not exceed fifty".*

18. However, it should be noted that the limitation on shareholders liability is not absolute and there may be circumstances in which the shareholders' liability may be extended beyond the capital contribution. Article 180 of the Companies' Law describes the circumstances in which such liability may be imposed and states the following:

    *"If losses incurred by a limited liability company amounts to fifty percent of the capital of the such company, the managers shall call the shareholders to hold a meeting within a period not exceeding thirty days as of the date on which the losses reach such amount in order for shareholders to consider whether the company shall continue to exist, with commitment on the part of its shareholders to pay its debts, or be dissolved. The shareholders' resolution in this respect shall be valid only if adopted as prescribed under Article 173. In all cases, however, such resolution must be published in the manner prescribed in Article 164.*

> *If the Company continues to carry out its business activities without the issuance of a resolution providing that it shall either continue to exist with the stipulation of the aforementioned condition or shall be dissolved, then the shareholders shall become jointly and severally liable to satisfy all the company's debt, and party having an interest therein may demand its dissolution"*

19. In light of the foregoing, I am of the opinion that Saudi Arabian adjudicatory bodies will most likely refrain from piercing the corporate veil unless the conditions stipulated in Article 180 referred above are present.

20. Further, it should be noted that under common and civil law systems, legislation or case law may cover misrepresentation, bad faith, fraud, unjust enrichment plus a duty not to act to the detriment of the another party. However, under Shariah Law, these are derivable from the Shariah principles of 'justice' and 'fairness'. Shariah Law abhors fraudulent acts. Personal responsibility for actions is the very basis of Shariah Law. Thus no party is permitted to hold others responsible for or burden others for fraudulent acts

21. And the following Shariah precept may be cited from the Quran :

> *[Quran 53:39] That no bearer of burden shall bear the burden of another*

22. The essence of Shariah Law is that the parties should conduct their business in an honest and transparent manner without any misrepresentation, fraud or inducement. Lack of full

386462.1

disclosure or transparency is abhorred and Shariah Law can and does take into account issues such as whether or not there was full disclosure, misrepresentation, mistake, illegality, and inducement etc. In this regard the Qur'an states the following:

> *[Qur'an 33:71] O ye who believe! Fear Allah and say the straightforward word.*

23. Thus under Shariah it is not open for a party to misuse, fraudulently misconstrue or misinterpret provisions of the transaction for committing any criminal acts.

24. In accordance with the above Shariah precepts, I am of the opinion that a Saudi Arabian adjudicatory body would most likely not pierce the corporate veil of any entity unless there is a prima-facie evidence of apparent fraud, commission of crime, injustice, other bad faith conduct or fulfillment of any specific circumstances stipulated in any Saudi Arabian regulations.

25. In support of my above contention, I refer to the Saudi Arabian Anti- Money Laundering Law (**'AML Law'**) issued pursuant to Royal decree no. M/39 dated 23rd August 2003, which stipulates particular circumstances when the corporate veil shall be pierced. Article 2 & 3 of the AML Law states the following:

> "*Article Two:*
>
> *Anyone who carries out any of the following acts shall be committing the crime of money laundering:*

*a) Conducting any transaction involving funds or proceeds, with the knowledge that they are the result of a criminal activity or have an illegitimate or illegal source.*

*b) Transporting, acquiring, using, keeping, receiving, or transferring funds or proceeds, with the knowledge that they are the result of a criminal activity or have an illegitimate or illegal source.*

*c) Concealing or falsifying the nature of funds or proceeds or their source, movement or ownership, place or means of disposal, with the knowledge that they are the result of a criminal activity or have an illegitimate or illegal source.*

*d) Financing of terrorism, terrorist acts and terrorist organizations.*

*e) Participating through agreement, assistance, incitement, providing of consultation and advice, facilitating, colluding, covering up or attempting to commit any of the acts specified in this article.*

*Article Three:*

*Anyone who carries out or participates in any of the acts specified in Article Two of this Law shall be committing a money laundering crime, **including chairmen of the boards of directors of financial and non-financial institutions, board members, owners, employees, authorized representatives, auditors or their hired hands who act under these capacities**,[Emphasis added] without prejudice to the criminal liability of the financial and non-financial institutions if that crime has been committed in their names or for their account."*

386462.1

11

26. As evident from the above, in case of commission of any of the crimes delineated in article 2 of the AML Law, the authorities shall pierce the corporate veil of any entity by imputing liability on the chairmen of the board, board members, owners (shareholders), employees, authorized representatives, auditors or their employees have a fiduciary relationship with the company.

27. In relation to the query of jurisdiction, it should be noted that while neither (a) the affirmation by Saudi Arabian parties of a foreign law as the law by which any agreement or arrangement is to be governed and construed; nor (b) the submission by the Saudi Arabian parties to the jurisdiction of foreign courts, contravenes any provision of published Saudi Arabian law, Saudi Arabian adjudicatory bodies would not be bound by any such acceptance or submission. And, if an action were instituted by or before such Saudi Arabian adjudicatory bodies, such Saudi Arabian adjudicatory bodies would apply only Saudi Arabian law which does not recognize the doctrine of conflict of laws.

28. The foregoing means that Saudi Arabian law recognizes that corporations are independent entities which may exercise their own rights and incur obligations, and in general terms, engage in any type of lawful business as long as the company complies with Shariah Law and applicable regulations.

29. To conclude, Saudi Arabian law recognizes corporation as independent juristic entity and allow piercing of the corporate veil under limited circumstances as described above.

386462.1

30. This opinion relates only to matters governed by Saudi Law and is specific to the regulations, specific information, and other relevant inputs referred to herein, through various regulatory instruments and specific sources referred herein and other documents examined by us, and Saudi Law and procedures and interpretations thereof in effect on the date hereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 11th June 2012

Jeddah, Saudi Arabia

HASSAN MAHASSNI

386462.3