UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP,

Petitioners,

-against-

INTERNATIONAL OIL OVERSEAS INC.,
MARINA WORLD SHIPPING CORP.,
GRESHAM WORLD SHIPPING CORP.,
TARAZONA SHIPPING CO., S.A., QUOIN
ISLAND MARINE WL, BAKRI TRADING CO.
INC., SCHIFF HOLDING CO. S.A., and
TRANS MEDITERRANEAN SHIPPING INC.,

Respondents.

---

Case No: 12 Civ. 3625 (LAK)

**SECOND DECLARATION OF
STELLA ALEXANDRI**

I, Stella Alexandri, submit this Declaration in further support of the Verified Petition of the Petitioners to Recognize, Confirm, and Enforce a Foreign Arbitral Award in favor of the Petitioners and against respondent INTERNATIONAL OIL OVERSEAS INC. ("IOOI"), as well as to recognize, confirm, and enforce said award against IOOI's alter egos, MARINA WORLD SHIPPING CORP., GRESHAM WORLD SHIPPING CORP., TARAZONA SHIPPING CO., S.A., QUOIN ISLAND MARINE WL, BAKRI TRADING CO. INC., SCHIFF HOLDING CO. S.A., and TRANS MEDITERRANEAN SHIPPING INC.  I also submit this Declaration to oppose the request of IOOI and the remaining respondents (the "Alter Ego Respondents") to dismiss the Verified Petition.

1.   I am a member of the Athens Bar and an attorney licensed to practice law in the courts of Greece.  I received my law degree from the University of Athens and an LL.M. from

the University of Southampton, England. I am currently employed as Manager of Claims for Eurotankers Inc. ("Eurotankers").

2. Eurotankers is an Athens-based, vessel management business that provides commercial and technical management on behalf of vessel owners and operators, including the Petitioners in this action. As mentioned in my 2nd May 2012 Declaration ("First Alexandri Declaration"), the Petitioners in this action are the owners of the vessels NOSTOS, MEMPHIS, VERES, and GENIE, all of which chartered their vessels to IOOI under vessel charter agreements. The Verified Petition requests that this Court confirm an arbitration award in Petitioners' favor obtained through London arbitration after disputes arose out of the vessel charter agreements. True and accurate copies of the original vessel charter agreements and the London arbitration award in Petitioners' favor were appended to my First Alexandri Declaration.

3. I respectfully submit to this Court that it is entirely appropriate to confirm the London arbitration award against not only IOOI, but against the Alter Ego Respondents as well. It is widely understood in the industry, and it is Eurotankers' assumption based on various factors, that IOOI was part of the Bakri group of companies operated out of Jeddah, Saudi Arabia. While the Bakri companies also own or operate their own vessels, their business model has been to use IOOI as a corporate vehicle with which to charter vessels from outside the Bakri group; e.g. Petitioners' vessels. The interrelationship between IOOI, the Alter Ego Respondents and the Bakri group is widely known in the shipping industry, as reflected by the many court actions filed against them.

4. IOOI has a long history of entering into vessel charter agreements and then refusing to pay demurrage and other amounts due the vessel owners under those agreements. For example, in July 2008, various other principals (i.e., vessel owners) of Eurotankers, Samantha

2

International Corp. and Petalon Shipping Co., filed an action against IOOI and several of the Alter Ego Respondents for unpaid demurrage and other amounts due under vessel charter agreements entered into with IOOI. The plaintiffs in that case succeeded in attaching property of Bakri Trading Co., one of the Alter Ego Respondents in the present case. As a result, IOOI agreed to place funds in a London escrow account as security for the plaintiffs' claims in London arbitration.

5. In December 2009, Samantha International Corp. entered into a settlement agreement with IOOI to settle the claims described above. According to the terms of the parties' agreement, the funds given as security by IOOI would be used to fund the settlement. However, the agreement also provided that the balance of IOOI's security remaining after the settlement was funded would be paid to Bakri Trading Co. Inc.'s bank account, and not to IOOI. Attached to this Declaration as Exhibit "1" is a true and correct copy of the Settlement Agreement between Samantha International Corp. and IOOI, and a copy of the Escrow Agreement is annexed thereto.

6. In all of its prior dealings with IOOI, Eurotankers has known IOOI to operate only out of Jeddah, Saudi Arabia and has never transacted any business with IOOI in which IOOI communicated from any place other than Saudi Arabia. I was therefore surprised to read the Declaration of Fahid Ghalib, identified as a director/secretary of IOOI, alleging that IOOI's three employees all work in the United Arab Emirates (UAE) and that "all" of IOOI's "commercial and corporate records" are maintained in the UAE. *Paragraphs 13 and 14 of Mr. Ghalib's Declaration.*

7. No one at Eurotankers has ever heard of, let alone dealt with, a Fahid Ghalib, when dealing with IOOI-chartered vessels. As far as Eurotankers personnel are aware, Shehariyar Backer, who holds himself out to the world as the Chartering Manager for the Alter

3

Ego Respondent Bakri Trading Co. Inc., was the person-in-charge of chartering vessels on behalf of IOOI. As far as Eurotankers was aware, Mr. Backer was at all times located in Saudi Arabia.

8. Attached to my Declaration as Exhibit "2" is correspondence from IOOI dated 24th June, 2007 and 28th January, 2008 addressed to Eurotankers. Mr. Ghalib's declaration notwithstanding, it can be readily seen that the address on the bottom of the correspondence is the same address as that of the Bakri group of companies, including the Alter Ego Respondents here.

9. I also note that Mr. Ghalib asserts that IOOI has only three employees. This claim surprises me, as I have recently received e-mails from the shipbroker acting between IOOI and Eurotankers that include five separate e-mail addresses for IOOI employees and its chartering department. A copy of correspondence containing these e-mail addresses is attached to my Declaration as Exhibit "3".

10. IOOI also claims that it does business in the UAE. IOOI has, in fact, provided Eurotankers with several addresses in the UAE, at which IOOI purports to do business for purposes of receiving invoices. *See* Exhibit "3" hereto, pp. 3, 4. However, our attempts to courier documents to those addresses have repeatedly failed and we have been informed that no company doing business as IOOI is located at those UAE addresses. Moreover, I can confirm that calls to the UAE telephone numbers provided by IOOI have gone unanswered.

11. I also note some irony in the fact that Fahid Ghalib's declaration submitted on behalf of IOOI was, in fact, executed in Jeddah, Saudi Arabia, as stated on the signature page.

12. Eurotankers has never received a hire payment from IOOI, but instead all payments have been made by other entities on IOOI's behalf. Attached to my Declaration as Exhibit "4" are eight electronic wire confirmations reflecting payments of hire by four of the

seven the Alter Ego Respondents to Eurotankers, even though the hire was owed by IOOI pursuant to vessel charter agreements and not by the Alter Ego Respondents. Specifically,

- On 3rd July 2007, Gresham World Shipping remitted a payment of €136,335.00 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT ESMERALDA.

- On 5th July, 2007, Tarazona Shipping remitted a payment of $135,880.00 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT ESMERALDA.

- On 17th December, 2007, Bakri Trading remitted a payment of $58,733.00 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT NAPA.

- On 30th June, 2008, Schiff Holding remitted a payment of $59,084.29 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT NAPA.

- On 8th October, 2009, Schiff Holding remitted a payment of $233,968.50 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT NOSTOS.

- On 22nd June 2010, Schiff Holding remitted a payment of $296,215.00 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT GENIE.

- On 6th August 2010, Schiff Holding remitted a payment of $427,040.75 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT VERES.

- On 7th October 2010, Schiff Holding remitted a payment of $414,322.00 to Eurotankers on account of a hire obligation owed by IOOI for charter of the MT MEMPHIS.

13. IOOI has sent Eurotankers banking information, including a Remittance Application Form and Outward Payment Customer Advice, for a hire payment that was made by Schiff Holding on behalf of IOOI, a copy of which is attached hereto as Exhibit "5". As can be seen, the bank account identified in these documents, 02647135801, is the same bank account used by Schiff Holding per the electronic wire confirmations attached hereto as Exhibit "4". IOOI's covering e-mails do not indicate that these payments are being made by a third party.

14. I have reviewed the Declaration of Abdul Kader El Amin, which was submitted on behalf of IOOI in the *Fair Spirit Maritime* matter. Mr. El Amin states that IOOI's "principal place of business" was in Fujairah, despite the fact that IOOI used its Jeddah, Saudi Arabia address in correspondence both before and after that date. In any event, the Fujairah address Mr. El-Amin provided is different from both Fujairah addresses that were eventually provided to Eurotankers. I also note that Mr. El Amin explicitly denies that IOOI is related to Schiff Holding Co. S.A., whereas Mr. Ghalib's declaration submitted on behalf of IOOI in the present action admits that IOOI "is a corporate affiliate of . . . Schiff." In any event, the multiple hire payments made by Schiff for IOOI indicate that they are clearly "related."

15. In my 15 years experience in handling shipping claims, it is not the general practice of the maritime community for independent companies to make or receive large payments on behalf of other independent companies. On the contrary, only intertwined companies, that act effectively as members of a single dependent group, make and/or receive payments on each others' behalf in circumstances where they have no contractual obligation or

relationship to do so.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _13th_ day of July 2012, at Piraeus, Greece.

_____
STELLA ALEXANDRI