# EXHIBIT F

Bruce G. Paulsen (BP 9563)
Brian M. Doyle (BD 1882)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
T: (212) 574-1200
F: (212) 480-8421

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAIR SPIRIT MARITIME LTD.<br><br>        Plaintiff,<br><br>     vs.<br><br>INTERNATIONAL OIL OVERSEAS INC. a/k/a IOOI, MARINA WORLD SHIPPING CORP., GRESHAM WORLD SHIPPING INC., BAKRI TRADING INC., TARAZONA SHIPPING CO., S.A., SCHIFF HOLDING CO. S.A. and QUOIN ISLAND MARINE WL.<br><br>        Defendant. | 08 Civ. 10109 (WHP) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECOGNITION, CONFIRMATION AND ENFORCEMENT OF ARBITRAL AWARD**

or about January 20, 2010, the panel rendered a decision in the London Arbitration against IOOI, which plaintiff now takes to enforce against the Security as against all Defendants, not just IOOI. *Paulsen Aff*. ¶ 16, Ex. F. The Security should be released, not enforced against.

## ARGUMENT

## I.

### THERE IS NO BASIS FOR PIERCING THE CORPORATE VEIL HERE

Contrary to Plaintiff's assertion, Defendants Bakri, Marina World, Gresham, Tarazona, Schiff Holding, and Quoin Island (collectively the "Bakri Defendants") are not alter egos of Defendant IOOI, and, therefore, the arbitration award should not be confirmed as to them. *See infra*, Point II. The alter ego allegations made against the Bakri Defendants have not been litigated in any jurisdiction and there has not been an alter ego finding that warrants piercing the corporate veil here.

For entities to be alter egos of one another, "control . . . is the key; the control must be used to commit a fraud or other wrong that causes plaintiff's loss." *Wm. Passalacqua Builders v. Resnick Developers S.,* 933 F.2d 131, 138 (2d Cir. 1991). Courts are reluctant to disregard corporate form, and therefore pierce the corporate veil, and will only do so in those circumstances where an entity has been "'so dominated by . . . another corporation . . ., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'" *Wm. Passalacqua Builders*, 933 F.2d at 138 (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)).

Courts look at a number of non-exclusive factors to determine whether the necessary dominion and control exists for the Court to pierce the corporate veil, including: "(1) the absence the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate

capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *Wm. Passalacqua Builders*, 933 F.2d at 139.

When applying these factors, "there is a presumption of separateness . . . which is entitled to substantial weight." *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 143 (E.D.N.Y. 2009)(quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988); *See also McAnaney*, 665 F.Supp.2d at 144(collecting cases: *Greene v. Long Island R.R. Co.*, 280 F.3d 224, 235 (2d Cir. 2002)("[C]orporate ownership of a subsidiary and overlapping offices and directorates are not, without more, sufficient to impose liability on the parent for conduct of the subsidiary[.]"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538 (S.D.N.Y. 2008) (holding that ownership and overlapping directors are insufficient, standing alone to pierce the corporate veil); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 342 F. Supp. 2d 207, 216 (S.D.N.Y. 2004) ("Courts have held, however, that factors such as sole ownership, overlapping directors, consolidated financial statements, and reference to the subsidiary as a department are insufficient to establish the type of day-to-day control necessary to disregard corporate separateness."); *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1277 (S.D.N.Y. 1984)("It is well settled that there must be complete domination and

control before the parent's corporate veil can be pierced. Stock control, interlocking directors and officers, and the like, are in and of themselves insufficient.")(internal citation omitted)). Further, a party seeking to pierce a corporate veil bears a "heavy burden" of demonstrating complete domination by the parent. *Christensen v. Sbm Indus.*, 9 Fed. Appx. 52, 53 (2d Cir. 2001).

As an initial matter, Plaintiff has failed to allege sufficient facts to support an alter ego finding as a matter of law, which is what plaintiff appears to be seeking here. In its Amended Verified Complaint, Plaintiff cites to a July 26, 2006 affidavit from Hara Anastasatou, a claims administrator involved in a completely unrelated litigation against IOOI (the "*Anastasatou Decl.*") as the basis for its alter ego allegations. *See Amend. Compl.* at ¶¶ 28 -33 (citing to an affidavit filed in *Route Holding Inc. et al. v. IOOI et al.* (06-cv-3428)). The Anastasatou Declaration cites -- as fact -- allegations contained in previously filed complaints against IOOI, and then draws the legal conclusion that IOOI is an alter ego of Marina World, one of the Bakri Defendants. Compellingly, the *Route Holding* matter was settled without an alter ego finding and specifically without admission of liability or obligation by Marina World toward the plaintiffs in that action for the debts of IOOI. (A copy of the stipulated settlement agreement is annexed hereto).

Aside from the impropriety of drawing legal conclusions in a fact affidavit, *See Hollander v. American Cyanamid Co.,* 172 F.3d 192, 198 (2d Cir. 1999), Plaintiff fails to offer any substantive evidence to support an alter ego finding against the Defendants in this action. Merely citing to allegations in other actions is insufficient to meet Plaintiff's heavy burden of demonstrating complete domination of IOOI by any of the Bakri Defendants. *Christensen*, 9 Fed. Appx. at 53.

6

Further, Plaintiff's allegations are factually incorrect and therefore cannot support an alter ego finding. First, Plaintiff alleges that members of the "Bakri family" control each of the entities and therefore each entity is an alter ego of each other entity. Mere overlap of officers and directors is legally insufficient to form an alter ego finding. More importantly, there is in fact no overlap of officers or directors between IOOI and the Bakri Defendants. The directors of IOOI are Mr. Abdul Kader Mohammed El Amin, Mr. Fahad Ghalib and Mr. Saber Abu Ammra. *Declaration of Hani Bakri* dated April 3, 2010 (the "*Bakri Decl.*"), at ¶ 13. None of these three individuals are directors or officers of any of the other Bakri Defendants. *Bakri Decl.* at ¶ 22.

Second, Plaintiff alleges that each of the entities operate from the same business address. This is factually incorrect. IOOI has as its principle place of business Fujairah, United Arab Emirates. *Id.* at ¶ 14. The remaining Bakri Defendants operate variously from locations in Saudi Arabia and Bahrain. *Id.* at ¶ 4-8. None of the Bakri Defendants maintain any place of business in any location where IOOI maintains a place of business. *Id.* at ¶ 22.

Third, Plaintiff alleges that the Bakri Defendants made "unusual payments" on behalf of IOOI as evidence of an alter ego relationship. First, Payments made by one corporation on behalf of another corporation are not per se unusual, *See MS Taga Bay GmbH et al. v. SA Independent Liner Services Pty Ltd et al.*, 2009 U.S. Dist. LEXIS 64639 at *4-5 (S.D.N.Y. July 27, 2009), and even if such payments were unusual, that would not be sufficient to demonstrate the requisite complete domination over IOOI to justify piercing the corporate veil. IOOI and the Bakri Defendants have a long standing business relationship and frequently engage in many commercial transactions. *Id.* at ¶ 15. On occasion, Bakri Trading will make payments to other parties on behalf of IOOI as a set-off against money Bakri Trading owes directly to IOOI. *Bakri Decl.* at ¶ 17. These transactions are always performed at arm's length. *Id.* at ¶ 16. Further,

7

none of the Bakri Defendants were engaged in the day to day operation of IOOI's business. *Id.* at ¶ 22. No officer or director of any of the Bakri Defendants performed any operational or managerial function at IOOI. *Id.* at ¶ 20.

Plaintiff has failed to demonstrate that any of the Bakri Defendants so dominate and control the day to day functions of IOOI that it is a mere shell for the Bakri Defendants. Further, Plaintiff cannot show that the Bakri Defendants exerted this control for the purpose of committing a fraud or other wrong against the Plaintiff, a crucial lapse. The alter ego allegations should be dismissed.

Further, and significantly, the alleged alter egos were not named in the London Arbitration. No tribunal has made a finding that the Bakri Defendants are alter egos of IOOI. No discovery has ever been taken on the issue, and Plaintiff relies solely on the Amended Complaint herein as a basis for recovery against the alter egos. As the Amended Complaint herein was dismissed upon the posting of security in what is now the bygone Rule B era, certiorari having been denied in *Jaldhi*, the parties hereto have not litigated the alter ego issue. Under no theory is Plaintiff entitled to recovery now against the Bakri Defendants, based solely on the allegations contained in the complaint. If recovery is to be had, it can only be after discovery, summary judgment or trial and a finding that the alleged alter egos are indeed so as a matter of fact or law.[3]

---

[3] Notably, if the Bakri Defendants are found to be alter egos, which they should not be, then the initial Rule B attachment as against them is infirm. IOOI registered to do business on January 8, 2009, prior to the amended complaint which added the Bakri Defendants and made alter ego allegations. *See Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009).

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FAIR SPIRIT MARITIME LTD.,                      :
                                                :
                Plaintiff,                      :    08 Civ. 10109 (WHP)
                                                :
        - against -                             :    ECF CASE
                                                :
INTERNATIONAL OIL OVERSEAS INC.,                :
a/k/a IOOI, MARINA WORLD SHIPPING               :
CORP., GRESHAM WORLD SHIPPING                   :
INC., BAKRI TRADING CO. INC.,                   :
TARAZONA SHIPPING CO., S.A., SCHIFF             :
HOLDING CO. S.A. and QUOIN ISLAND               :
MARINE WL,                                      :
                                                :
                Defendants.                     :
------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
# RECOGNITION, CONFIRMATION AND ENFORCEMENT OF ARBITRAL AWARD

LENNON, MUPRHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050
(212) 490-6070

*Attorneys for Plaintiff*
FAIR SPIRIT LTD.
Patrick F. Lennon
Nancy R. Siegel
pfl@lenmur.com
nrs@lenmur.com

i

conduct additional discovery to flesh out the contested alter-ego issues before it was confirmed against the alter-ego defendant. Judge Buchwald held as follows:

> Because there are disputed issues of fact as to whether Lio can properly be considered an alter ego of Edible and thus bound by the arbitration agreement, it would be premature to confirm Stolt's petition as against Lio on that ground. See A/S Concordia, 503 F.2d 318. It is apparent, however, that a more complete factual development might eliminate some of the disputed issues as to Lio's potential alter ego status. We therefore grant petitioner's request to conduct additional discovery as to the relationship between Lio and Edible and as to Edible's actual involvement in the charter agreement.

*Stolt-Nielsen*, 2007 U.S. Dist. LEXIS 7408, at *14.

As it turns out, the Court ultimately allowed the Plaintiff to confirm the arbitration award against the alter-ego LIO at a later date. *See In re Stolt-Nielsen Transp. Group B.V.*, 2008 U.S. Dist. LEXIS 19787, at *3 (S.D.N.Y. Mar. 7, 2008). Where a plaintiff alleges sufficient facts to support an inference of alter-ego, discovery regarding the alter-ego allegations is warranted. *See Nat'l Ability S.A. v. Tinna Oils & Chems. Ltd.*, 2008 U.S. Dist. LEXIS 87326 (S.D.N.Y. Oct. 7, 2008)(ordering that parties engage in discovery on issue of alter-ego).

Furthermore, where an award has been confirmed as a judgment in New York under the New York Convention, the Court may order discovery regarding the extent of the principal's assets, which includes assets being held by alter-egos. *See Dulce v. Dulce*, 233 F. 3d 143, 146 (2d Cir. 2000)(holding that "as a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees. This includes proceedings to enforce the judgment").

### POINT III  PLAINTIFF HAS MET ITS BURDEN TO CONFIRM THE AWARD AGAINST THE ALTER-EGO DEFENDANTS

#### 1. Defendants misstate the alter-ego standard

Defendants have set forth the alter-ego standard under New York law. However, this

4

is an admiralty case, where federal common law applies. Under federal common law, the corporate form will be ignored and liability imposed on another corporate entity or the principals, if it is shown that the interconnected organization was utilized to perpetrate a fraud **OR** where one entity or individual(s) so dominated another that it was in effect, carrying on the principal's business. *See Kirno Hill Corp. v. Holt*, 618 F. 2d 982, 985 (2d Cir. 1980). In a maritime case, it is sufficient to show that the parent or controlling principal so dominated the subsidiary or other units within the group such that they were mere tools or instrumentalities to carry on the overall business of the principal. *See discussion Kirno Hill*, 618 F.2d at 985 and *Matter of Holburn*, 774 F. Supp. at 844 (S.D.N.Y. 1991). While there is no precise test to determine whether an entity is an alter ego of another, in general, the corporate veil may be pierced where it can be demonstrated that the parent or controlling entity was the 'true' or prime mover behind the subsidiary. *See Carte Blance (Singapore) v. Diners Club Intern*, 758 F. Supp. 908, 918 (S.D.N.Y. 1991).

In determining whether an individual so dominated and disregarded a corporate entity's corporate form, a court may consider several factors, including:

> The absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.* issues of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporate, (7) whether the related corporations deal with the dominated corporate at arms' length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by the other of the corporations as if it were its own.

*Wm. Passalacqua Buildings Inc. v. Resnick Developers South Inc.*, 933 F.2d 131, 139 (2d Cir. 1991). However, while these factors guide the analysis, any one factor could be enough by itself to pierce the corporate veil providing it was equitable do so.

5

As confirmed by the Second Circuit Court of Appeals, "[t]here is no set rule as to how many of these factors must be present to warrant piercing the corporate veil and courts have considered additional factors as well. Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil has been that liability is imposed when doing so would achieve an equitable result." *Williamson v. Recovery L.P.*, 542 F.3d 43, 53 (2d Cir. 2008)(internal citations omitted).

Contrary to Defendants' assertion, there is no requirement that the wrong alleged relate to the alter-ego behavior. Rather, as set forth above, Plaintiff must merely show that the Barki Defendants were the prime movers and controllers behind IOOI, or vice versa.

Here, the Bakri Defendants' domination and control over IOOI cannot honestly be questioned. There is a history of the Bakri Defendants paying the debts of IOOI. Furthermore, it appears the Bakri Defendants have gone to great lengths to cover up their relationship with IOOI. In there submissions in this proceeding, they failed to reveal that they operate out of the same building as IOOI, which is owned and operated by the BAKRI family. As the Bakri Defendants have withheld and/or intentionally provided inaccurate information to the Court regarding their relationship to IOOI, their objections to a finding of alter-ego should be rejected in their entirety.

One of the most compelling pieces of evidence with regards to alter-ego is the fact that <u>in this very case</u>, the Defendant Bakri Trading posted a bond for Plaintiff's claims against IOOI when only funds of Bakri Trading and Quioin Island had been attached. That is, Bakri guaranteed a debt of IOOI where it had no obligation to do so – one of the main hallmarks of alter-ego. In order to have its funds released, Bakri Trading could have posted a bond for Plaintiff's claims against Bakri Trading only. <u>However, this is not what occurred.</u> Rather, Bakri Trading posted a Bond for all of Plaintiff's claims including those against IOOI. Bakri has admitted that there is common control among the remaining Bakri Defendants. *See Declaration of Mr. Hani Bakri,* ¶2.

6

Thus, as Bakri posted a bond for Plaintiff's claims against IOOI where it had no obligation to do so, and it has been conceded that Bakri Trading is an affiliated company with the remaining Bakri Defendants which operate out of the same building, *i.e.* are commonly operated and controlled, there is sufficient evidence to make a finding of alter-ego. Clearly, as shown by the posting of the bond, the assets of Barki Trading and the other Baki Defendants are at the disposal of IOOI. Indeed, the hire payment made under the charter party between Plaintiff and IOOI in this case was made by Defendant Gresham World Shipping, not IOOI. For these reasons alone, the Court has sufficient evidence to pierce the corporate veil and enter judgment against the alter-ego Defendants.

### 2. Defendants' submission should be disregarded.

Defendants' submission is supported by two declarations, one from Mr. Hani Bakri of Bakri Trading and one from Mr. Abdul Kader El Amin of IOOI. It appears that these declarations contain false and/or misleading statements regarding IOOI's relationship to the Bakri Defendants, and for this reason alone their submissions should be disregarded and/or their motion denied.

Mr. Bakri and Mr. Amin state in their declarations that IOOI's main place of operation is a P.O. Box in Fujariah. First, the concept that an active chartering company's operational office is a P.O. Box is too farfetched to believe. Second, Mr. Bakri himself already confirmed that IOOI indeed operates out of the same office building as Marina World Shipping and the other Bakri Defendants.

In previous declarations submitted to this Court, Mr. Bakri admitted that Marina World Shipping and IOOI operate out of the exact same building in Jeddah (Al Bakri Building). *See Declarations of Mr. Hani Bakri submitted in Route Holding and Beam Company v. Int'l Oil Overseas Inc. et. al – 06 Civ. 3428 dated July 18, 2006 and August 7, 2006 annexed hereto as Exhibits "1" (¶8) and "2" (¶14) respectively.*

7

Furthermore, the letterhead of the IOOI reveals that IOOI uses the same mailing address at that used by the other Bakri Defendants: 3757, P.O. Box. Jeddah, Saudi Arabia. *See IOOI Letterhead annexed hereto as Exhibit "3."* Thus, the declarations of Mr. Hani Bakri and Mr. El Amin should be given no weight since they contain clear inaccuracies and/ misleading statements. IOOI's primary operating address is the exact same as the other Bakri Defendants.

Finally, Mr. Bakri and Mr. Amin have been less than forthcoming regarding the extent to which the Bakri Defendants pay the debts of IOOI. As was established in *Route Holding and Beam Company v. IOOI and Marina World Shipping*, supra, the Bakri Defendants have a systematic practice of paying the debts of IOOI. Mr. Bakri himself admitted in his declaration in the *Route Holding* case that Marina World Shipping made several payments on behalf of IOOI, including paying the costs of an arbitration award rendered against IOOI. *See Exhibit "1," p. 6.* However, Mr. Bakri and Mr. Amin in their recent declarations indicate that the Bakri Defendants only make payments for IOOI "from time to time." However, as established below, the Bakri Defendants appear to pay the debts of IOOI on a day to day basis, <u>even after Mr. Bakri confirmed that such debts would no longer be paid for IOOI.</u>

In Mr. Bakri's previous declaration submitted in the *Route Holding* matter he states: "Due to the restraint of funds in two different cases in this Court because of conflicts IOOI is having with its contractual partners, we have made it clear to IOOI that MWS will no longer make payments as set out [above] as we wish to avoid being involved in any other like disputes." *See Exhibit 1, ¶3*. However, notably, the Bakri Defendants have continued to make payments for IOOI since that day. Just in relation to one charter (for the MT ADRIATIC SEA between IOOI and non-party Bezon Shipping), the Bakri Defendant(s) made several payments on behalf of IOOI, where IOOI was the only party liable for them. *See Complaint filed in Bezon Shipping v. IOOI et. al., 07 Civ. 11363 annexed hereto as Exhibit "4" detailing payments made by Bakri Defendants*

8

*on behalf of IOOI on the following dates: August 13, 2007 in the amount of $845,032.48, September 6, 2007 in the amount of $1,019,692.74, October 10, 2007 in the amount of $725,170.71, May 29, 2007 in the amount of 1,105,460.88;, June 6, 2007 in the amount of $977,455.00 and July 5, 2007 in the amount of $1,017,653.12.* These are large payments made after Mr. Bakri said that debts would no longer be paid for IOOI.

In addition, the payment made to Plaintiff in this case, **due from IOOI**, was actually made by GRESHAM WORLD SHIPPING INC., P.O. BOX 3757, JEDDAH – 21481 on April 5, 2007. Despite Mr. Bakri's statements in the *Route Holding* case, the Bakri Defendants are still paying IOOI's debts with no known consideration. In light of the foregoing false and/or misleading statements, the declarations of Mr. Bakri and Mr. El Amin should be given little or no weight, the arbitration award should be confirmed as a judgment against IOOI and the alter-ego Defendants. In addition to the above, there is further evidence of alter-ego.

### 3. Summary of alter-ego evidence

The evidence of alter-ego is summarized below:

**The Bakri Defendants systematically pay IOOI debts.** *See Exhibits "1," "2" and "4" See also Decl. of Martin Glibbery at Exhibit "5" and Decl. of Hara Anastasatou annexed to Amended Verified Complaint as Exhibit "4", setting forth in detail the facts below.*

- In a charter party dated April 25, 2005 between non-party Route Holding and IOOI, all IOOI's debts for freight were paid to Plaintiff by Marina World Shipping; *See Declaration of Hara Anastasatou.*

- In a charter party dated May 28, 2005, between non-party Beam Company and IOOI, all IOOI's debts for freight were paid to Plaintiff by Marina World Shipping; *Id.*

- In a charter party non-party Garda Shipping and IOOI, Marina World Shipping paid debts to Plaintiff due and owing from IOOI; *Id.*

- In three other charters (of the PELAGOS, PROGIPOS and NORD SEA), Marina World Shipping paid debts on behalf of IOOI; *Id.*

- An arbitration award was rendered against IOOI in relation to the charter of the SHIBUMI; Marina World Shipping **made a series of four payments** to Waterson

9

>
> Hicks for arbitration costs assessed against IOOI even though Marina World Shipping was not a party to the arbitration; *Id.*
>
> - Defendant Gresham paid monies to Plaintiff in this case, which were solely due from IOOI in relation to the charter of the FAIR SPIRIT;
>
> - In a charter between Bezon Shipping and IOOI, Bakri Defendants made several large payments to Bezon where IOOI was the only party liable therefore. *See Exhibit "4."*
>
> - There is no evidence that IOOI has ever paid any debts on its own behalf. IOOI apparently has no other purposes or function then to enter into charter parties and other maritime related contracts on behalf of the BAKRI Group.

**IOOI and the Bakri Defendants reside and operate out of the same location**

> - IOOI and the Bakri Defendants reside and operate out of the "AL BAKRI Building, Al Andulas Street, P.O. Box 3757, Jessah 21481, Saudi Arabia; *Exhibit "1"*
>
> - Notwithstanding an admission that IOOI operates out of the Al Bakri Building, Mr. Hani Bakri now maintains that IOOI's principal place of business in a P.O Box.

**The Bakri Defendants guarantee debts of other companies in the group**

> - Bakri Trading in this action posted a bond for Plaintiff's claims against all Defendants including IOOI, where it had no obligation to do so

**The directors of IOOI are linked and/or control to the Bakri Group (*Exhibit "5"*)**

> - Two of the three directors of IOOI are directly linked to the Barki Group.

Taking together the fact that Bakri Trading posted a bond for Plaintiff's claims against IOOI (and all other Defendants) where it had no obligation to do so, the fact that the Defendants operate out of the same office space (which the Defendants attempted to hide), and that the Bakri Defendants have continuously and systematically paid the debts of IOOI, after Mr. Hani Bakri said he would no longer do so, it is evident that IOOI and the Bakri Defendants are one entity.

**POINT IV**     <u>**THE PRESENCE/JURISDICTION ARGUMENTS ARE A RED HERRING**</u>

The attachment was vacated by agreement of the parties. Thus, Defendants' efforts to attack the attachment on "presence" grounds should be disregarded as the attachment no longer exists. Furthermore, Defendants' jurisdictional arguments should be rejected. Defendants

10