924-08/MEU
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROXY INC., MEMPHIS SHIPPING PTE LTD.,
DYNASTIC MARITIME INC. and
SAMANTHA SHIPMANGEMENT GROUP,                    12 Civ. 3625 (LAK)

                  Petitioners,

      -against-                                    **AFFIRMATION OF**
                                                                          **MICHAEL E. UNGER**
INTERNATIONAL OIL OVERSEAS INC.,
MARINA WORLD SHIPPING CORP.,
GRESHAM WORLD SHIPPING CORP.,
TARAZONA SHIPPING CO., S.A., QUOIN
ISLAND MARINE WL, BAKRI TRADING
CO. INC., SCHIFF HOLDING CO. S.A., and
TRANS MEDITERRANEAN SHIPPING INC.,

                  Respondents.
-----------------------------------------------------------x

      MICHAEL E. UNGER affirms the following under penalty of perjury:

      1.     I am a member of the law firm of Freehill, Hogan & Mahar, LLP, attorneys for Respondents in the above action. I am admitted to practice before this Honorable Court and am fully familiar with the facts and circumstances surrounding this litigation, and respectfully submit this Affirmation in support of Respondents' Cross-Motion to Dismiss the Petition on grounds of *forum non conveniens,* lack of personal jurisdiction, improper service and failure to state a cause of action on which relief may be granted.

**Petitioners' "Collateral Estoppel" Theory**

      2.     In Petitioners' opposition to the Cross-Motion, Petitioners contend that their *alter ego* claims against Respondents were previously adjudicated on the merits and resulted in a finding of fact imposing *alter ego* liability in two separate, completely unrelated actions

388901.2

captioned: *Fair Spirit Maritime Ltd. v. International Oil Overseas, Inc.*, No. 08 Civ. 10109 (WHP) (S.D.N.Y.), and *Andros Maritime Co. Ltd. v. International Oil Overseas, Inc.*, No. 11 Civ. 1654 (WHP) (S.D.N.Y.). (*See* Dkt. No. 33, Affidavit of Peter Skoufalos at ¶¶ 10-11; Dkt. No. 33, Petitioners' Memorandum in further support of Petition and in opposition to Cross-Motion at pp. 1, 3-5, 16 & 24).

3.   The alter egos claims asserted in *Fair Spirit* were deemed <u>moot</u> at the oral argument held in that case on May 27, 2010.  *Fair Spirit* involved a then typical Rule B attachment action in which a number of electronic funds transfers, including transfers involving putative alter ego Bakri Trading Co., Inc., had been restrained.  Defendants subsequently posted a bond as alternative security, the bond providing that any settlement or judgment against IOOI could be enforced against the bond. After the Court rejected the defendants' motion to release or reduce the security, Judge Pauley granted plaintiff's motion to recognize and confirm the London arbitral award which had been issued against IOOI only.  (*See* copy of May 27, 2010 hearing transcript at p. 18, attached hereto as **Exhibit A**).  No determination on the merits of the alter ego claim was ever made and, notwithstanding the assertions of Petitioners' herein, no judgment was ever entered holding the alleged alter egos liable to the plaintiff in *Fair Spirit*.

4.   The same is true for the case of *Andros Maritime* in which the undersigned appeared as counsel for the respondents.  In that case, the petitioner obtained a default judgment against IOOI and alleged alter egos based upon a London arbitral award.  No trial on the merits was ever held or finding of fact ever made holding any of the alleged alter egos liable to the plaintiff in *Andros Maritime*.

5.   In an effort to enforce the default judgment entered against the alleged alter egos in the *Andros Maritime* matter, petitioner Andros served multiple restraining notices on multiple

2

banks, trying to target any active accounts then in use by the alleged alter egos. Petitioner's service of the subpoenas resulted in disruption to the respondents' banking and threatened to put them in breach of obligations owed to their contractual partners.

6.  The alleged alter egos jointly instructed undersigned counsel to file a motion to vacate the default judgment on the grounds that it had been invalidly entered as service of the petition for recognition had not been properly made on any of the respondents in that case. In an effort to alleviate the disruption caused by Andros' efforts to enforce its invalid default judgment, the alleged alter egos posted $180,000 in security on a joint and several basis to be held in the Registry of the Court pending the outcome of the vacatur motion.

7.  Before the emotion was heard, IOOI settled with Andros on its principal claim and paid that settlement out of fresh funds.

8.  Before the security posted by the alleged alter egos could be released, counsel for the petitioner in *Andros Maritime* filed a separate action on behalf of other clients in the matter captioned *Springsea Maritime Corp. v. International Oil Overseas Inc.*, No. 11 Civ. 7821 (JGK), and proceeded to re-attach the security posted in Andros which otherwise would have been released to the alleged alter egos.

9.  Undersigned counsel is advised that the alleged alter egos have elected to hold off on filing a motion to vacate the Rule B attachment over their funds in the *Springsea* matter because IOOI has advised them that: (a) it is considering a settlement with the *Springsea* plaintiffs; and (b) it is in a position to argue that the underlying claims by the *Springsea* plaintiffs are untimely or otherwise stale. To the extent that IOOI succeeds in either (a) settling the dispute or (b) successfully disposing of the *Springsea* claims as a matter of law, it is more economical

for the alleged alter egos to leave the funds in place and to be reimbursed for the loss of use of the funds by the unsuccessful litigant in *Springsea*.

**Petitioners' References to "The Order of Attachment"**

10. Petitioners' reply and opposition papers makes a number of representations that refer to an "order of attachment" issued in this proceeding but, as the court docket sheet in this matter makes clear, no such order was ever issued. (*See e.g.* Pet. Reply/Opp Br. at p. 6: "The $180,000 under attachment in this action"; *see id.* at p. 23: "The Court's Order of Attachment was Proper").

**Petitioners' Proffered *Alter Ego* "Evidence"**

11. In an effort to clarify the record, I begin by identifying the sources of the "evidence" on which Petitioners rely to support their *alter ego* claims asserted against Respondents in this case.

> (a) Petitioners represent that, in the *Andros Maritime* matter, the alleged alter egos had deposited the $180,000 "as security for an arbitral award against IOOI."
>
> - **Petitioners' source:** Declaration of Tariq Mousa, Manager for Respondent Bakri Trading Company Ltd, paragraphs 19 & 21 (Dkt. No. 24).
>
>   The cited paragraphs in the Mousa Declaration actually state that "These funds were deposited at the direction of Bakri Trading as well as other respondents improperly named as purported alter egos in the matter of *Andros*…, in which the petitioner, Andros Maritime Co. Ltd. ("Andros", attempted to enforce a default judgment that was improperly entered in its favor and ***against Bakri Trading***, resulting in a disruption to Bakri Trading's operations." (*See* ¶ 19). "In an effort to alleviate the disruption caused by the Andros plaintiff's improper efforts to enforce the invalid default judgment entered against Bakri Trading, Bakri Trading together with the other improperly named alleged *alter egos* of IOOI posted security into the Registry of the Court on a joint and several basis pending

4

the outcome of the alleged alter egos' motion to vacate the default judgment as against them." (*See* ¶ 21).

(b) Petitioners represent that "various" alleged alter egos "paid freight for a vessel chartered by IOOI".

- **Petitioners' source:** Second Declaration of Stella Alexandri, Claims Manager for non-party "Eurotankers, Inc.", Paragraph 12 and Exhibit 4 (Dkt. No. 32).

    The Declaration references eight payments made between 2007 and 2010 relating to five different vessels, all of which were paid to Eurotankers, not Petitioners.

Petitioners represent that this, when coupled with "*submissions in other actions*", is "apparently a common practice with the Respondents".

- **Petitioners' source:** A declaration of Hara Anastasatou prepared over six years ago on behalf of two completely unrelated companies in opposition to a motion to vacate a maritime attachment in *Route Holding Inc. v. Int'l Oil Overseas Inc.,* No. 06 Civ. 3428 (PKC) (S.D.N.Y), annexing four wire transfers made over 10 years ago.

(c) Petitioners represent that IOOI and Respondent Schiff Holding made a statement more than four years ago in connection with the *Fair Spirit* case that they were "not affiliated" at that time. Petitioners assert that this four-year-old statement is "contrary to declarations" made by IOOI and Schiff Holding in the present action stating that they are now "affiliated companies." (*See* Pet. Reply/Opp. Br. at 7).

(d) Petitioners represent that "IOOI has provided Petitioners' managers at least two different Fujairah addressees for delivery of invoices, and UPS reported that it was able to deliver to either because IOOI was not located at the addresses." (*See* Pet. Reply/Opp. Br. at 7).

5

388901.2

- **Petitioners' source:** The Second Alexandri Declaration at Paragraph 10 and Exhibit 3 thereto - a string of emails regarding an unrelated transaction not involving the Declarant or Petitioners.

(e) Petitioners assert that Sheriyar Backer is associated with an IOOI email address and is also known as the chartering manager for a **non-party** named "Bakri Navigation Co".

- **Petitioners' source:** The Second Alexandri Declaration at Paragraph 7. The relevant time period(s) during which Mr. Backer purportedly acted in such capacity is not specified.

(f) Petitioners represent that IOOI has "five separate email addresses" and that the declaration submitted by IOOI in this matter stated that it had three employees.

- **Petitioners' source:** The Second Alexandri Declaration at Paragraph 9 and Exhibit 3 - a string of emails regarding an unrelated transaction sent more than six months prior to the submission of IOOI's declaration in this matter. [One of the five IOOI email addresses is: iooi@oiloverseas.com.]

(g) Petitioners other "evidence" regarding *alter ego* is based on declarations up to 11 years old filed in other cases in which no trial was held.

12. In *Samantha Int'l. Corp. v. Int'l Oil Overseas Inc.*, No. 08 Civ. 6595 (DLC) (S.D.N.Y. 2008), unrelated parties obtained a Rule B attachment against IOOI and some of the alleged alter egos, including Bakri Trading. Funds of Bakri Trading in the form of EFTs were attached at JP Morgan Chase and Citibank. IOOI (and/or its insurer) agreed to post funds in escrow to serve as alternative security pending arbitration, and all of the parties simultaneously executed a Stipulation and Order directing the garnishee banks to release Bakri Trading's funds according to instructions to be later provided. (*See* copy of stipulation and order, attached hereto as **Exhibit B**). IOOI eventually settled with the plaintiffs on their principal claims and paid the

settlement out of a portion of the escrow funds; the balance of the escrow funds were to be remitted to IOOI's (or its insurer's) nominated account.

Dated: New York, New York
      August 3, 2012

                                                MICHAEL E. UNGER

388901.2